**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **STACEY DIANE FOCKE, individually** | § | |
| **and as Representative of THE ESTATE** | § | |
| **OF MARY DIANE ACORD, deceased;** | § | |
| **HAROLD EUGENE ACORD; and** | § | |
| **STEVEN HAROLD ACORD,** | § | **CIVIL ACTION NO._____** |
| | § | |
| *Plaintiffs*, | § | **JURY TRIAL DEMANDED** |
| | § | |
| **v.** | § | |
| | § | |
| **GENERAL MOTORS, LLC,** | § | |
| | § | |
| *Defendant*. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME Stacey Diane Focke, individually and as Representative of the Estate of Mary Diane Acord, Deceased; Harold Eugene Acord; and Steven Harold Acord ("Plaintiffs") and file this Original Complaint against General Motors LLC and would respectfully show the Court the following:

**I.
PARTIES**

1.01   Plaintiff Stacey Diane Focke is, and was at all time relevant, a resident of Seabrook, Texas, and citizen of the State of Texas.  She is the surviving adult daughter of Mary Diane Acord, deceased.

1.02   At the time of her death, Mary Diane Acord was a resident of Houston, Harris County, Texas, and a citizen of the State of Texas. Accordingly, the Estate of Mary Diane Acord is a citizen of Texas.

---

1.03    Plaintiff Harold Eugene Acord is, and was at all time relevant, a resident of Seabrook, Texas, and a citizen of the State of Texas.  He is the surviving spouse of Mary Diane Acord, deceased.

1.04    Plaintiff Steven Harold Acord is, and was at all time relevant, a resident of Buda, Texas, and a citizen of the State of Texas.  He is the surviving adult son of Mary Diane Acord, deceased.

1.05    Defendant General Motors LLC ("Defendant" or "GM") is a Delaware limited liability company with its principal place of business in Detroit, Michigan.  Its sole member is General Motors Holdings, LLC, which is also a Delaware limited liability company with its principal place of business in Michigan.  General Motors Holdings, LLC's sole member is General Motors Company which is a Delaware corporation with its principal place of business in Michigan. Thus, General Motors LLC, General Motors Holdings, LLC, and General Motors Company are, and were at all times relevant, citizens of Delaware and Michigan. Defendant General Motors LLC does not have any members that are located in or are citizens of the State of Texas, but it regularly does business in the State of Texas. Defendant General Motors LLC may be served with process through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## II.
### JURISDICTION AND VENUE

2.01    Since complete diversity of citizenship exists between the parties, and the matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000), exclusive of interest and costs, this court has diversity jurisdiction under 28 U.S.C. 1332.

2.02   Venue is proper in the Southern District of Texas—Houston Division, pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omission giving rise to the claim occurred in Harris County, Texas, which is in the Southern District—Houston Division. Plaintiffs would show that the incident at issue occurred in La Porte, Harris County, Texas.

### III.
### FACTS

3.01   On October 27, 2024, Mary Diane Acord ("Decedent") was the restrained passenger in a 2023 Chevrolet Malibu, VIN: 1G1ZB5ST5PF176371 ("the Vehicle") driven by her husband, Harold Acord, traveling north on State Highway 146 in La Porte, Texas. When Mr. Acord attempted to take the exit to State Highway 225 West, the Vehicle struck the crash barrier and concrete barrier wall on the right side of the exit ramp before coming to a stop.

3.02   Although Decedent was properly wearing her seatbelt at the time of the accident and her airbags deployed, she suffered significant blunt force trauma, including subarachnoid brain hemorrhages and other injuries, from which she later died.

### IV.
### STRICT LIABILITY AND NEGLIGENCE CLAIMS

4.01   The Vehicle at issue in this suit was designed, tested, manufactured, constructed, marketed, distributed, sold and/or placed into the stream of commerce by and through the agents and/or representatives of GM.

4.02   GM was regularly engaged in the business of supplying or placing products, like the Vehicle in question, in the stream of commerce for use by the consuming public, including Decedent..  Further, such conduct was solely for commercial purposes.

4.03   At the time the Vehicle was designed, manufactured, and sold by GM, it was defective in design and unreasonably dangerous with respect to its restraint system, including the

front passenger seatbelt and airbags, which allows the passenger's head and torso to move significantly in a foreseeable accident and strike parts of the vehicle's interior.  In foreseeable accidents, the front passenger can suffer severe and possibly fatal injuries even when properly belted and with airbag deployment, which is what occurred in this case.

4.04   The Vehicle in question remained unchanged from the time it was originally manufactured, distributed and sold by GM until it reached Decedent and ultimately led to her injuries and death. Stated another way, the Vehicle in question was defective and in an unreasonably dangerous condition at all times until it ultimately caused the injuries and damages asserted herein.

4.05   At the time the Vehicle was placed into the stream of commerce, it was, or should have been, reasonably expected and foreseeable that the Vehicle would be used by persons such as Decedent in the manner and application in which it was being used at the time Decedent suffered her injuries.

4.06   There were no mandatory safety standards or regulations adopted and promulgated by the federal government or an agency of the federal government that were applicable to the Vehicle at the time of manufacture and that governed the product risk that allegedly caused harm. Alternatively, the design of the Vehicle did not comply with mandatory safety standards or regulations adopted by the federal government that were applicable to the vehicle model at the time of the manufacture and governed the risks that caused Decedent's injuries.  Again, in the alternative, in the event that such standards were in effect, and they were complied with, they were nonetheless inadequate to protect the public from unreasonable risks of injury or danger, or the manufacturer, before or after marketing the Vehicle, withheld or misrepresented the information or material irrelevant to the federal governments or agencies determination of adequacy of the safety standards or regulations at issue in the action.

4.07    With respect to the design of the Vehicle, at the time it left the control of GM, there were safer alternative designs. Specifically, there were alternative designs that, in reasonably probability, would have prevented or significantly reduced the risk of injury to Decedent. Furthermore, such safer alternative designs were economically and technologically feasible at the time the product left the control of GM by the application of existing or reasonably achievable scientific knowledge.

4.08    At the time the Vehicle left the control of GM, it was defective and unreasonably dangerous in that it was not adequately designed, manufactured or marketed to minimize the risk of injury.  By way of example and without limitation, the product in question was unreasonably and dangerously defective in the following ways:

    a.    the vehicle was not crashworthy and did not reasonably minimize the risk of injury to the front passenger in a foreseeable accident;

    b.    the front passenger's restraint system, including seatbelts and airbags, was defectively designed because it failed to properly restrain the front passenger during foreseeable accidents; and

    c.    the warnings and instructions for the Vehicle were inadequate.

4.09    The above unreasonably dangerous defects in the Vehicle in question were the proximate and producing cause of Decedent's injuries and Plaintiffs' damages.

4.10    Defendant GM breached its duty of care and was thus negligent by:

    a.    designing and distributing the Malibu model with a design standard that was intended to meet the minimum government regulations, instead of safely designing the vehicle to reasonably minimize injuries in foreseeable accidents;

    b.    failing to adequately monitor the performance of GM vehicles in the field to ensure that they were reasonably minimizing injuries in foreseeable accidents;

    c.    failing to adequately test the Malibu model to ensure that it would be reasonably safe in foreseeable accidents;

---

    d.       failing to design the front passenger's restraint system, including the seatbelts and airbags, in the Malibu model to reasonably secure the front passenger during a foreseeable accident;

    e.       failing to recall, retrofit, or issue post-sale warnings after Defendant knew or should have known that the Malibu model was defective and unreasonably dangerous.

4.11    Plaintiffs further contend that GM is not entitled to a rebuttable presumption that it is not liable for any injury to Decedent caused by the formulation, labeling or design of the product in question because it has not established that the product's formulation, labeling and design complied with a mandatory federal standard or regulation. Plaintiffs contend that there is no FMVSS regulation that governs the product risk involved. In the event Defendant does establish compliance with such a regulation or standard, Plaintiffs will present evidence that the regulation or standard is inadequate to protect the public from unreasonable risks of injury or damage.

4.12    The above negligent acts and/or omissions were a proximate and producing cause of the injuries and damages alleged by Plaintiffs, herein.

## V.
### DAMAGES

5.01    As a proximate result of the negligence of Defendant as above described, Plaintiffs Stacey Diane Focke, Harold Eugene Acord and Steven Harold Acord, as statutory beneficiaries of Decedent under the Wrongful Death Statute, are entitled to bring this cause of action for all damages that they has suffered as a result of the wrongful death of Decedent pursuant to Section 71 of the Texas Civil Practice and Remedies Code (the "Wrongful Death Statute"). Such wrongful death damages include Plaintiffs' pecuniary loss, meaning the loss of care, maintenance, support, services, advice, counsel and reasonable contributions of a pecuniary value that they would, in reasonable probability, have received from Decedent had she lived; Plaintiffs' loss of companionship and society, meaning the loss of the positive benefits flowing from the love,

comfort, companionship, and society that they would, in reasonable probability, have received from Decedent had she lived; Plaintiffs' mental anguish, meaning the emotional pain, torment, and suffering experienced by Plaintiffs because of the death of Decedent, and Plaintiffs' loss of inheritance resulting from the Decedent's death.

5.02    Plaintiff Stacey Diane Focke, as Representative of the Estate of Mary Diane Acord, deceased, also brings this action under the Texas Survival Statute to recover for Decedent's conscious pain and suffering, mental anguish, medical bills, funeral and burial expenses, and all other damages allowed by law.

## VI.
### EXEMPLARY DAMAGES

6.01    Plaintiffs alleges that each and every negligent act or omission of Defendant and its agents, as set forth above, when viewed objectively from the standpoint of policymakers, involved an extreme degree of risk, considering the probability and magnitude of the physical harm to others and that Defendant had actual subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of Plaintiffs and others like them, and therefore, such conduct amounts to gross negligence or malice, as those terms are defined by law, so as to give rise to an award of exemplary or punitive damages, for which Plaintiffs now plead against Defendant.

6.02    Additionally, by reason of such conduct, Plaintiffs are entitled to, and therefore assert, a claim for punitive and exemplary damages in an amount sufficient to punish and deter Defendant, and others like it, from such conduct in the future.

## VII.
### RULE 193.7 NOTICE

7.01    Pursuant to Rule 193.7 of the Texas Rules of Civil Procedure, Plaintiffs hereby gives notice to the Defendant that they intend to use all documents exchanged and produced

between the parties, including but not limited to all correspondence, pleadings, records, and discovery responses, during the trial of this matter.

## VIII.
### PRE-JUDGMENT AND POST-JUDGMENT INTEREST

8.01    Plaintiffs claim prejudgment and post-judgment interest at the maximum rate allowed by law.

## IX.
### JURY DEMAND

9.01    Plaintiffs respectfully request the Court impanel a jury to decide all fact issues in this case.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray Defendant be cited to appear and answer this Complaint and that upon final hearing, Plaintiffs recover judgment against Defendant for their damages as they appear at trial hereof together with costs of court, pre-judgment and post-judgment interest, and for such general and equitable relief as Plaintiffs may be entitled.

Respectfully submitted,

*/s/ James Mitchell*
**JAMES L. MITCHELL**
State Bar No. 14214300
jim@paynemitchell.com
**ANDREW S. BULLARD**
State Bar No. 24104622
abullard@paynemitchell.com
**PAYNE MITCHELL RAMSEY SANGER**
3500 Maple Avenue, Suite 1250
Dallas, Texas 75219
214/252-1888  Telephone
214/252-1889  Facsimile

ATTORNEYS FOR PLAINTIFFS